Norman LAW, et al., Plaintiffs,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, Defendant.

William Hall, Plaintiffs,

v.

National Collegiate Athletic Association, Defendant.

Doug Schreiber, et al., Plaintiffs,

v.

National Collegiate Athletic Association, Defendant.

Nos. CIV. A. 94-2053-KHV, CIV. A. 94-2392-KHV, CIV. A. 95-2026-KHV.

United States District Court, D. Kansas.

July 18, 2000.

---

Lori R. Schultz, W. Dennis Cross, Morrison & Hecker L.L.P., Kansas City, MO, Spencer J. Brown, Thomas E. Deacy, Jr., Deacy & Deacy, Kansas City, MO, Robert G Wilson, Cotkin, Collins & Ginsburg, Los Angeles, CA, Gerald I Roth Allentown, PA, for Norman Law, Andrew Greer, Peter Herrmann, Michael Jarvis, Jr., Charles M Rieb.

Craig T. Kenworthy, John J. Kitchin, Swanson Midgley, LLC, Kansas City, MO, Beverley J Klein, Howard J Roin, Alan N Salpeter, Michele L Odorizzi, Bradley J Andreozzi, Mayer, Brown & Platt, Chicago, IL, Alan I Rothenberg, William J Meeske, Latham & Watkins, Los Angeles, CA, William C Barnard, Gayle A Reindl, Sommer & Barnard, P.C., Indianapolis, IN, Gregory L Curtner, Miller, Canfield, Paddock & Stone, P.C., Ann Arbor, MI, Linda J. Salfrank, Shook, Hardy & Bacon L.L.P., Miami, FL, for National Collegiate Athletic Assn.

Stephen C. Mayer, Mayer & Rosenberg, Kansas City, MO, Priscilla Lord Faris, Faris & Faris, St. Paul, MN, for William Butters, movant.

Spencer J. Brown, Thomas E. Deacy, Jr., Deacy & Deacy, Kansas City, MO, for Gerald I. Roth, movant.

Ken Denzel, Chicago, IL, pro se.

## *MEMORANDUM AND ORDER*

VRATIL, District Judge.

This matter comes before the Court on class counsel's *Motion For Approval Of Revised Plan Of Allocation* (Doc. #1040) filed May 26, 2000 and *Motion For Attorney's Fees* (Doc. #1027) filed by Gerald H. Abrams on April 25, 2000. For reasons stated below, the Court approves the revised plan of allocation and overrules the motion for attorney's fees.

### *Factual Background*

The proceedings in this case are well documented. *See Law v. National Collegiate Athletic Ass'n*, 185 F.R.D. 324 (D.Kan. 1999); *Law v. National Collegiate Athletic Ass'n*, 5 F. Supp.2d 921 (D.Kan.1998); *Law v. National Collegiate Athletic Ass'n*, 902 F.Supp. 1394 (D.Kan.1995), *aff'd*, 134 F.3d 1010 (10th Cir.), *cert. denied*, 525 U.S. 822,

119 S.Ct. 65, 142 L.Ed.2d 51 (1998). The following is a brief summary.

In January 1991, by majority vote, the NCAA adopted the restricted earnings rule. The rule, which was effective from August 1, 1992 through May 25, 1995, limited the compensation of entry-level coaches to $12,000.00 for the academic year and $4,000.00 for the summer months. It also limited the number of coaches in Division I sports and required institutions to designate one coach in every sport except football a "restricted earnings coach." In Division I men's basketball, for example, the rule allowed three head or assistant coaches and one restricted earnings coach.

Restricted earnings coaches filed class actions which challenged the rule under Section 1 of the Sherman Act. On July 25, 1995, the Court determined as a matter of law that the NCAA had violated Section 1, and entered summary judgment in favor of the coaches. In January 1996, it also issued a permanent injunction which restrained the NCAA from promulgating this or any other rules that embodied similar compensation restrictions. In April 1998, the remaining liability and damage issues were tried to a jury. At trial, plaintiffs' damage expert eliminated damage claims for coaches in basketball and football if their actual academic-year salaries were below specified limits ($7,900.00 for basketball and $3,950.00 for football). Although plaintiffs' expert testified that any coach who worked as a restricted earnings coach between 1992 and 1997 was "touched" or "nicked" by the NCAA's antitrust conspiracy, he conceded that the effect of the rule likely diminished as the actual salaries decreased. In other words, the rule had a greater depressive effect on the salary of a coach who earned $12,000.00 than on the salary of a coach who earned $1,000.00. The jury returned a verdict in favor of plaintiffs for $22.3 million which, with trebling, resulted in an aggregate award of $66.9 million. The Court awarded plaintiffs an additional $5.026 million as a net present value adjustment.

Before the Court awarded attorneys' fees, the NCAA agreed to pay $54,500,000.00 to settle the lawsuits. On August 31, 1999, the Court approved the settlement but did not rule on the allocation of the proceeds among class members. On August 31 and September 3, 1999, the Court awarded attorneys fees in the amount of $18,209,149.50 and costs in the amount of $1,749,302.80 to counsel for plaintiffs.

In the spring of 1999, class counsel mailed, posted and published a notice of settlement and a proposed plan for allocating the settlement proceeds among claimants. In this original plan, class counsel eliminated the minimum salary requirements for basketball and football coaches which their expert had used at trial. After the Claims Administrator calculated all claim values using the methodology of the original plan, class counsel and their economic consultant determined that the plan was not fair because it over-compensated claimants whose actual salaries were significantly below the salary limit of $12,000 per academic year, at the expense of higher-paid claimants who were more likely to have been damaged by the rule.

Class counsel then proposed a revised plan of allocation which was more consistent with the damage methodology used at trial. In the revised plan, counsel proposed to limit the claim value for coaches who earned less than $7,900.00 during any academic year ($3,950.00 in football) to the lesser of (1) the amount calculated under the trial methodology or (2) the amount of his or her academic-year salary. On March 28, 2000, the Court entered its preliminary approval of the revised plan of allocation. *See Order* (Doc. #1018) filed March 28, 2000. The Court also approved the form of notice to claimants and scheduled a hearing on the fairness of the revised plan for June 13, 2000. *See id.* Shortly thereafter, the Claims Administrator sent each member of the settlement class a notice of the revised plan of allocation and hearing date.

In all, 26 class members filed objections to the revised plan of allocation. On June 13, 2000, the Court held a hearing on the fairness of the revised plan. One coach, Woodrow Wilson, appeared by counsel to object to the plan.

### Standards For Approval Of Class Action Allocation Plan

 Rule 23 of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court." "Approval of a plan of allocation of a settlement fund in a class action is 'governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166, 183–84 (E.D.Pa.2000) (quoting *In re Computron Software, Inc.,* 6 F.Supp.2d 313, 321 (D.N.J.1998); *see Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992); *In re Painewebber Ltd. Partnerships Litig.,* 171 F.R.D. 104, 132 (S.D.N.Y. 1997)). As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable. *See Ikon,* 194 F.R.D. 166, 2000 WL 567104, at *17 (citing *Computron,* 6 F.Supp.2d at 321); *see also Smith v. MCI Telcoms. Corp.,* No. 87-2110-EEO, 1993 WL 142006, at *2 (D.Kan. April 28, 1993) ("allocation method is reasonable and fairly compensates the members of the plaintiff class in proportion to the injury that could be substantiated at trial"). In addition, if differences exist between the "likelihood of ultimate success" for different plaintiffs, "it is appropriate to weigh 'distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set' that was more likely to succeed." *Painewebber,* 171 F.R.D. at 133 (quoting *Agent Orange,* 611 F.Supp. at 1411); *see In re Oracle Secs. Litig.,* 1994 WL 502054, at *1 (N.D.Cal. June 18, 1994) (reasonable to allocate more of settlement to class members with stronger claims); *In re Gulf Oil/Cities Serv. Tender Offer Litig.,* 142 F.R.D. 588, 596 (S.D.N.Y.1992) (same). The adequacy of an allocation plan ordinarily "turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *Painewebber,* 171 F.R.D. at 133.

### Analysis

 The Court has written extensively on this case and it heard all of the testimony and argument at trial. Most of the objections to the revised plan of allocation either have been previously resolved or raise issues that were vigorously litigated at earlier stages of the litigation. The revised plan is consistent with the economic theory and proof of damages at trial. The Court also gives substantial weight to the opinions of experienced counsel in this case regarding the fairness of the settlement and allocation. *See In re Michael Milken & Assocs. Secs. Litig.,* 150 F.R.D. 57, 68 (S.D.N.Y.1993) (citing *Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir.1982)). After carefully considering the various objections by class members, the Court finds that the revised allocation plan is fair, reasonable and adequate, and that it should be approved. The Court will address the class members' objections generally by subject matter.

### I. Coaches With Actual Salaries Less Than $7,900.00 ($3,950.00 for Football Coaches)

At trial, plaintiffs' expert did not calculate any damages for basketball coaches whose salaries were less than $7,900.00 or football coaches whose salaries were less than $3,950.00. Plaintiffs' expert testified that at these thresholds he observed visible differences in the financial impact of the rule on basketball and football coaches. In the original plan of allocation, class counsel proposed to eliminate this distinction so that all coaches would be compensated under the same

formula. In the revised plan of allocation, class counsel propose that the claim value for any coach who was paid less than $7,900.00 ($3,950.00 for football) be the lesser of the amount calculated under the trial methodology or 100 per cent of his or her actual salary.

Men's basketball coaches Brendan Magee, Ken Potosnak, Woodrow Wilson and Dean Murray, baseball coach Tom Baxter and wrestling coach Tyrone Howard object to the formula used to determine claim values for coaches whose salary was less than $7,900.00. The basketball coach objections are based on the fact that the coaches will receive less under the revised plan of allocation than under the original plan.[1] The coaches, however, have not shown that they sustained damages which are greater than the amount they will receive under the revised plan. Moreover, the $7,900.00 and $3,950.00 thresholds are well supported by the trial testimony. In response to the NCAA argument that the rule had no effect on coaches who earned less than $12,000.00, class counsel decided to calculate damages for basketball and football coaches who received more than the threshold amounts. In addition, plaintiff's expert conceded that the effect of the rule likely diminished as salaries decreased. Class counsel's decision to retain the salary thresholds in the revised plan is appropriate. Without such thresholds, coaches who received salaries substantially below the $12,000 cap would be overcompensated at the expense of coaches who received salaries at or near the $12,000.00 cap and suffered the brunt of damages from the rule. The latter coaches should receive a greater portion of the settlement. The Court notes that coaches who received salaries substantially below the cap are not completely excluded from the plan. For example, Coach Wilson, who received $7,000 per year for four of the relevant years as a restricted earnings coach, will receive $28,000.00 under the revised plan of allocation for those years. For Coach Wilson to recover 100 per cent of his salary for these four years is not unfair or unjust. Indeed, given that the University of Wisconsin paid him only $7,000.00 when it could have paid him $12,000.00 under the rule, Coach Wilson's allocation under the revised plan seems generous. In sum, the Court finds that the $7,900.00 threshold ($3,950.00 in football) is fair and supported by the trial testimony and economic theory.

## II. Including Income Other Than Coaching Salary

At trial, the NCAA argued that any damage award should be decreased for amounts which the coaches received from summer camps, outside sources, under the table payments, and benefits such as automobiles, medical insurance and retirement plans. Because of differences in how the institutions reported such income and massive problems with incomplete data, class counsel decided for purposes of trial to exclude all "other income" from the compensation of both class members and reference coaches. In the original and revised plans of allocation, class counsel continued to exclude "other income."

Basketball coaches Magee, Potosnak and Wilson and men's track coach Steve Silvey object to the exclusion of other income. In particular, Coaches Magee, Potosnak and Wilson claim that their salaries would exceed the $7,900.00 threshold if other sources of income were included.[2]

If the Court required class counsel to count "other income" for purposes of the $7,900.00 threshold, they would have to devise a new formula to incorporate such

1. Coaches Baxter and Howard actually receive more under the revised plan of allocation than they would have received under the original plan. Accordingly, their objections are overruled.

2. Coach Silvey objects to the exclusion of other income from the salary of his reference coach because the reference coach received payments from a foundation affiliated with the school.

income into the salaries of both reference coaches and all other class members. In addition, to be consistent, class counsel would have to include other income for purposes of determining the salary ratio for the pre-rule period. Contrary to Coach Wilson's argument, the Court cannot allow a few coaches on the edge of the $7,900.00 threshold to count "other income" while excluding such income for the rest of the class and the reference coaches. Indeed, the testimony of plaintiffs' expert regarding the $7,900.00 threshold is based on the premise that "other income" is not included. If "other income" were considered for all coaches, the $7,900.00 threshold would likely be significantly higher and the claim values of all coaches above the threshold would increase because the reference coach salary would increase. The Court cannot be assured that Coaches Magee, Potosnak and Wilson would be above any new threshold. The Court also notes that despite extensive efforts, class counsel have been unable to obtain complete and accurate data for "other income." To the extent that NCAA members maintain accurate data for the relevant time period, class counsel would have to expend significant resources to obtain it. The Court believes that consideration of "other income" at this time would vastly complicate the allocation process and lead to unfair results and extensive delay because of data problems.

In sum, consideration of other income is not necessary to achieve a fair allocation because the trial methodology did not include such income and consideration of such income is not likely to have a material bearing on the allocation of the settlement fund. The Court sees no purpose in further delaying the distribution of the settlement fund, in the hope that class counsel can eventually obtain accurate data on "other income" for all class members and reference coaches. The prospects for collecting such data are slim, and would not justify the expense of the effort. The only certainty of such an exercise would be a further delay in payment to the coaches and a significant reduction of the settlement fund.

## III. The Age Adjustment

One coach objects to the age adjustment factor. At trial, plaintiffs' expert estimated damages by taking the predicted pay of each restricted earnings coach and deducting his or her actual pay (adjusted to the age of the coach and further adjusted for inflation). The age adjustment was based on the fact that more experienced coaches generally are paid more than less experienced coaches. The age adjustment in the revised plan of allocation is consistent with the evidence presented at trial and is reasonable, based on the relationship between pay and experience.

## IV. Schools Employing Less Than Maximum Number Of Non-Restricted Earnings Coaches

Illinois State University designated David Barnes a restricted earnings wrestling coach for academic year 1994-95, but it did not employ any unrestricted assistant coach in wrestling. Coach Barnes objects to the exclusion of coaches who were designated restricted earnings coaches at schools which employed less than the maximum number of coaches in their sports. Class counsel concluded that coaches in those positions were not affected by the rule, however, and should not participate in the settlement. The Court agrees. The rule did not directly impact Coach Barnes in 1994-95 because Illinois State University had an unrestricted earnings position in which it could have employed him.

## V. Unpaid Coaches

One coach objects to the exclusion of volunteer coaches from the settlement fund. Volunteer coaches do not fall within the class certified by the Court, however, and their exclusion from the settlement is appropriate and fair.

## VI. Objections To Trial Methodology

Two coaches object to the application of the trial methodology in the plan of allocation. Baseball coach Steve Heon argues that his claim should be the total amount by which the rule reduced his overall salary and benefits for the combined jobs of baseball coach and licensing director for the University of Virginia. Baseball coach Thomas Matthews argues that his claim does not include damages "for being forced out and not being able to get back into college coaching." Although several coaches testified that they suffered damages other than the reduction of their actual coaching salary, class counsel decided not to seek damages for such injuries because they felt it was not practical. The salary-based measure of damages which counsel adopted was appropriate in this case and an allocation of damages based on that same measure is reasonable and fair to class members.

## VII. Objections To Calculation Of Specific Claimant's Damages

A number of coaches question or object to the data used to calculate their claims.[3] Class counsel already have corrected many claims, based on revised information from the schools. Several of the claims have not been revised because the coaches did not obtain verification or revised information from their schools. The Court believes that class counsel have resolved these objections in an appropriate manner. Class counsel cannot rely on the bald assertions

of class members to calculate claims. Their decision to rely on the information which the NCAA members submitted in response to subpoena is reasonable and consistent with efficient administration of the settlement fund.

Women's volleyball coach Alex Postpischil argued that his predicted salary should have been 75 per cent of the salary of the first assistant at the University of Maryland at College Park.[4] In the revised allocation plan, plaintiffs' expert calculated each coach's predicted salary by looking at the actual average relationship between the academic-year salary of the coach whose position was subsequently designated a restricted earnings position and that of the next higher-paid coach for the pre-rule years (1985-86 through 1991-92). In the case of Coach Postpischil, class counsel did not calculate his predicted salary based on the salary of the first assistant because the university did not employ a full complement of coaches in women's volleyball before the rule was enacted. Instead, class counsel used the sport-wide average ratio of 48 per cent. This calculation of predicted salaries at schools which did not employ full complements of coaches in a particular sport is fair and reasonable.

Men's tennis coach Steve Silvey also argues that his predicted salary should be 75 per cent of the salary of the first assistant at the University of Arkansas. As noted above, class counsel used the 75 per cent figure as a hypothetical example. Coach

---

**3.** Gerald H. Abrams, attorney for Coach Lisa Abrams, asks the Court to award him the attorneys' fees incurred in filing her objection. Coach Abrams essentially questioned the accuracy of the information which the University of Wisconsin originally submitted. After class counsel received the corrected information, they recalculated her claim. The value of her revised claim is zero. Coach Abrams has not objected to her revised claim. The Court disagrees with Mr. Abrams' assertion that his actions conferred a benefit on the class. Moreover, he does not cite any authority for an award of attorneys fees in these circumstances. His request is therefore overruled.

**4.** In the original and revised plans of allocation, class counsel used the 75 per cent figure in a hypothetical to explain the methodology of the allocation plans. Both plans explain, however, that the actual percentage for each coach is determined for each sport, based on the average relationship between the academic year salary of the coach whose position was subsequently designated "Restricted Earnings Coach" and that of the next higher-paid coach for the seven years prior to the rule, *i.e.* 1985-86 through 1991-92. The plans also explain that where sufficient school-specific data is not available, sport-wide averages are used.

Silvey calculated his predicted salary based on the 75 per cent figure and calendar year salary, not academic year salary. Also, he apparently did not use the *average ratio* of the first assistant salary to the second assistant salary for years 1985-86 through 1991-92. After this information is considered, class counsel's statement of Coach Silvey's claim appears to be accurate.

## VIII. Other Objections

Women's basketball coach Carol Owens objects that coaches who were not restricted earnings coaches are improperly receiving a share of the settlement fund. Coach Owens has not provided any data to support her assertion. Moreover, class counsel represent that they are not aware of any instance in which a claimant who was not a restricted earnings coach will receive a share of the settlement. Accordingly, the objection is overruled.

The Court also received an anonymous objection from "dissatisfied basketball coaches." The objection was untimely and does not contain any specific data for the Court to analyze its merits. Moreover, the objection does not address the proposed plan of allocation and it is therefore overruled.

## IX. Conclusion

As explained above, the Court finds that the revised plan of allocation is fair, reasonable and adequate. In reaching this conclusion, the Court notes that the allocation effectively matches each plaintiff's recovery to the strength of his or her claim. For practical purposes, the class-wide plan of allocation cannot account for every individual circumstance. The value of each individual's claim is not a reflection of his or her effort or contribution to his or her respective school. Rather, it is a reasonable estimate of the extent of damages which each coach sustained because of the rule. The method of allocation is well supported by the trial testimony of plaintiffs' expert, as well as economic theory and

factors regarding the efficient administration of the settlement fund. Any attempt to further refine the method of allocation would unduly diminish and delay the payments to individual class members with no material improvement in the fairness of the plan. Accordingly, the Court approves the revised plan of allocation.

**IT IS THEREFORE ORDERED** that settlement counsel's *Motion For Approval Of Revised Plan Of Allocation* (Doc. #1040) filed May 26, 2000 be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that the *Motion For Attorney's Fees* (Doc. #1027) filed by Gerald H. Abrams on April 25, 2000 be and hereby is **OVERRULED.**