**In re: CITRIC ACID ANTITRUST LITIGATION.**

**This document relates to: All Actions.**

**No. C–95–2963–CAL.**

United States District Court, N.D. California.

Jan. 31, 2001.

See also, 191 F.3d 1090.

Kirk B. Hulett, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Leonard Barrack, Steven A. Asher, Barrack Rodos & Bacine, Philadelphia, PA, Guido Saveri, Richard Saveri, Saveri Law Group, Inc., San Francisco, CA, Bruce L. Simon, Nancy L. Fineman, Joseph W. Cotchett, Cotchett Pitre & Simon, Burlingame, CA, Steven A. Kanner, Michael J. Freed, Michael Hyman, Much Shelist Freed Denenberg Ament & Eiger PC, Chicago, IL, for 7–Up Bottling Co. of Philadelphia, Inc., plaintiff.

Joseph W. Cotchett, Cotchett Pitre & Simon, Burlingame, CA, for Varni Brothers Corp., plaintiff.

Henry Lerner, Allen Matkins Leck Gamble & Mallory LLP, San Francisco, CA, S. Martijn Steger, Robert G. Cohen, Kegler Brown Hill & Ritter, Columbus, OH, for Ashland, Inc., Van Waters & Rogers, Inc., plaintiffs.

Kevin D. Reese, Sheppard Mullin Richter & Hampton, San Francisco, CA, for Coca–Cola Enterprises, Inc., Plaintiff.

Charles F. Preuss, Vernon I. Zvoleff, John J. Powers, Preuss Walker & Shanagher LLP, San Francisco, CA, Robert E. Bloch, Mark W. Ryan, Mayer Brown & Platt, Washington, DC, for Cargill Inc, defendant.

## ORDER REGARDING PROPOSED PLAN OF DISTRIBUTION OF SETTLEMENT PROCEEDS TO CLASS MEMBERS

LEGGE, District Judge.

Plaintiffs' class counsel brings this motion for approval of a proposed plan for the distribution of the proceeds of the class settlement. Certain class members object to the plan, because the proposed method of distribution would pay settlement proceeds calculated on purchases some of the class members made from a non-settling defendant which was found not to be liable. The motion has been briefed, argued and submitted for decision. The court has reviewed the record of the case, the moving and opposing papers on this motion, the arguments of counsel, and the applicable authorities.

I.

This antitrust action arises from an alleged conspiracy by certain manufacturers, sellers and distributors to fix the prices of citric acid. Numerous class actions were filed and were later transferred to this court by the Judicial Panel on Multidistrict Litigation.

The class complaints name five defendants. Four defendants settled in 1996 for approximately $86 million, leaving Cargill Inc. as the sole remaining defendant. Class counsel did not seek approval to distribute the settlement proceeds at that

time. Instead, they chose to wait until the action against Cargill was resolved. However, Cargill defeated plaintiffs' claims at summary judgment. That judgment was affirmed on appeal. *In re Citric Acid Litigation,* 191 F.3d 1090, 1106 (9th Cir. 1999). In affirming the judgment, the Ninth Circuit found that the evidence in the record "... does not support a reasonable inference that Cargill was involved in the citric acid price-fixing conspiracy." *Id.* The U.S. Supreme Court denied *certiorari.*

■ Class counsel then brought this motion for approval of a plan for the distribution of the proceeds paid by the four settling defendants. The plan proposes to allocate the settlement proceeds among all class members *pro rata.* The problem is that the calculation of each class member's share would be based upon the dollar amounts that each class member paid for direct purchases of citric acid from all five defendants, including from Cargill.

Class members Van Waters & Rogers Inc. and Ashland Inc. (the "objectors") oppose the plan of distribution because it allows class members to recover based upon their purchases from Cargill. The objectors argue that such a plan is legally improper, and that it is unfair because it would materially decrease the shares of the class members who did not purchase from Cargill. The dollar differences resulting from the two methods of calculation are substantial.

### II.

■ Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement: the distribution plan must be "fair, reasonable and adequate." *In re Computron Software Inc.,* 6 F.Supp.2d 313, 321 (D.N.J. 1998) (*citing Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1284–85 (9th Cir. 1992).) A plan of allocation that reim-

burses class members based on the type and extent of their injuries is generally reasonable. *See id.; see also In re Ikon Office Solutions, Inc. Securities Litig.,* 194 F.R.D. 166, 184 (E.D.Pa.2000).

The issue here is whether it is "fair, reasonable and adequate" to allocate settlement proceeds to class members based on their purchases from Cargill, after it has been judicially determined that the class did not have a valid claim against Cargill.

### III.

The court first looks at what the class members were told. Both parties point to the class settlement notices and releases. Those documents, however, do not resolve the present issue.

The class settlement notice stated that the settlement funds are "for the benefit of the class." But the notice says nothing about the allocation of the settlement proceeds. A supplemental notice of settlement was later sent to all class members, but it was specifically addressed to class members who purchased from the settling defendants only. It excludes any mention of Cargill purchasers' stake in the settlement proceeds. The language of the settlement notices is therefore inconclusive.

Addressing the releases obtained from the class in favor of the four settling defendants, plaintiffs contend that they demonstrate that the four defendants sought to "buy peace" with all class members, regardless of who purchased from whom. Even if this argument is relevant, it is not determinative. First, the Ninth Circuit has found that the mere fact of signing a release does not, by itself, entitle a class member to recover. *In re Cement & Concrete Antitrust Litigation,* 817 F.2d 1435, 1443–44 (9th Cir.1987). Second, the releases state that they are *not* dependent on how the settlement proceeds are allo-

cated. Instead, the releases expressly state that class members may not sue the settling defendants even if the class members do not share in the proceeds. The parties all agree that the four settling defendants get the full benefit of the class releases, regardless of how the settlement proceeds are allocated.

Further, when class counsel sought approval of the settlements, they justified the fairness of the settlements by showing that the amounts were based on approximately 10 percent of each of the settling defendants' citric acid sales. That is, each settling defendant contributed money to the settlement fund based on its own market share of the sales.

Class counsel contends that it is common practice in class actions to allow class members who purchased from non-settling defendants to share in the recovery. Plaintiffs cite *In re Cement & Concrete Antitrust Litigation*, for this proposition. *See* 817 F.2d at 1439. However, *Cement* is distinguishable, because there the non-settling defendants remained as defendants and were alleged to be co-conspirators at the time of the settlement allocation, and were therefore potentially jointly and severally liable to all class members. Here, the Ninth Circuit has conclusively determined that Cargill was not a co-conspirator. *Citric Acid*, 191 F.3d at 1106. This determination by the court of appeals is the law of the case and may not be ignored. *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir.1993).

## IV.

While there is no case precisely on point, this court is of the opinion that class members should not receive settlement proceeds based on their purchases from a defendant which has been adjudicated to be not liable. This result is required because the class members have been found not to have been harmed by any action of Cargill. The anti-trust laws require that a successful claimant suffer "anti-trust injury." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). Here the class members have not suffered any antitrust injury in their purchases from Cargill, because Cargill has been found not to have violated the anti-trust laws.

Nevertheless, class counsel advances the argument that the conspiracy indirectly raised the price of citric acid purchased from Cargill, thereby causing harm to the class as a whole—the "price umbrella" theory. The Ninth Circuit has ruled against applying that theory to grant standing to purchasers from a non-conspirator in a multi-level distribution context. *See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 691 F.2d 1335, 1340 (9th Cir.1982). More recently, a district court also rejected the theory in a single-level distribution scheme like the one alleged here. *See Garabet v. Autonomous Tech. Corp.*, 116 F.Supp.2d 1159, 1169 (C.D.Ca.2000). Based on *Petroleum Products* and *Garabet*, the "price umbrella" is not a legal basis for conferring standing on an antitrust plaintiff. For the same reasons, it should not be a valid basis for recovering for purchases from a non-settling, non-liable defendant.

The Ninth Circuit addressed a similar situation in *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 461 (9th Cir.2000), a securities class action. The district court approved a distribution of settlement proceeds based on a rescissory measure of damages. Certain class members objected to the method of distribution, arguing that it would leave a large portion of the class without recovery from the defendant. The trial court overruled the objector's arguments and the Ninth Circuit affirmed. The Ninth Circuit reasoned that a class member should be legal-

ly harmed in order to recover, a principle in keeping with other courts. *See In re Chicken Antitrust Litigation American Poultry*, 669 F.2d 228, 238 (5th Cir.1982) (finding that it would be improper to allow class members without valid legal claims to share in settlement funds); *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F.Supp.2d 1193, 1200 (D.Kan.2000) (same). Here, since Cargill did no legal harm to any class member, the class shall not recover for their purchases from Cargill.

Class counsel argue that all class members should recover simply because they were in the class when it settled. However, the *Mego* and *Cement* decisions make clear that there is no right to recovery in a class action simply because one is a class member. Class counsels' other arguments, that deference should be afforded to the opinion of class counsel, and that the class representatives were all Cargill purchasers, do have some merit. They do not, however, overcome the fundamental point that it has been judicially determined that Cargill did not legally harm the class.

### V.

For the reasons discussed, class counsels' motion for approval of the proposed plan for distribution of the settlement proceeds is DENIED. Class counsel is to submit a new distribution plan in which the class members' purchases of citric acid from Cargill are excluded from the calculations of the distributions to the class members.

IT IS SO ORDERED.