Joel MARCUS, and David Morando, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

STATE OF KANSAS, DEPARTMENT OF REVENUE; Stephen S. Richards, individually and in his capacity as Secretary of the Kansas Department of Revenue; and Sheila Walker, individually and in her capacity as Director of the Kansas Department of Motor Vehicles, Defendants.

No. 96–4140–DES.

United States District Court, D. Kansas.

July 10, 2002.

J. Davis Connor, Stephen R. Senn, Peterson & Meyers, P.A., Lakeland, FL, Robert Joseph Antonello, Antonello & Fegers, P.A., Winter Haven, FL, John J. Miller, Kansas City, MO, Robert G. Fegers, Antonello, Fegers & Cea, Winter Haven, FL, for Plaintiffs.

Richard L. Cram, Kansas Department of Revenue Bureau of Legal Services, Joseph Brian Cox, Kansas Department of Revenue, Topeka, KS, for Defendants.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is before the court on Plaintiffs' Motion for Award of Attorneys' Fees and Expenses (Doc. 117) and final approval of the parties' settlement agreement. After reviewing the parties' supportive documentation and holding a hearing on these matters, the court is now prepared to rule

## I. Background

The named plaintiffs, Joel Marcus and David Morando, have alleged on behalf of themselves and others similarly situated, that defendants have wrongfully collected fees for parking placards and identification cards that allow persons with disabilities and transporters of the same to use accessible motor vehicle parking spaces that are reserved for use by persons with disabilities and that said placard and card fees violate the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.* The defendants deny plaintiffs' allegations.

On January 9, 2002, the parties entered into mediation in an attempt to settle this dispute. Those negotiations were successful. In full settlement of all claims on behalf of the class, the named plaintiffs and defendants agreed to the terms of a settlement agreement. On April 29, 2002, the parties filed a joint motion for an order

granting preliminary approval of the settlement agreement and scheduling a fairness hearing.

On May 1, 2002, the court issued an order granting the parties' joint motion for preliminary approval of the settlement agreement and granting plaintiffs' motion for class certification. (Doc. 116). The court made extensive findings as to the viability of the class. The court found that the proposed class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) of the Federal Rules of Civil Procedure. The court further found that the class should be certified under Rule 23(b)(2).

After certifying the class, the court granted the parties' joint motion for preliminary approval of the settlement agreement. The court found that the proposed settlement agreement was a result of extensive, arm's-length negotiations between the parties. The court also found that the terms of the settlement were sufficiently reasonable, adequate, fair, and consistent with the requirements of Rule 23. Thus, the court preliminarily approved the settlement agreement and ordered the parties to give notice to class members. Final approval of the settlement agreement was found to be subject to the hearing of any objections by members of the class at the fairness hearing and the court's consideration of the same.

In ordering notice to the class, the court found that notice by publication was sufficient for class actions maintained pursuant to Rule 23(b)(2). *See* Fed.R.Civ.P. 23(d) (requiring notice to be given in such manner as the court may direct). *See also Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 681 (D.Kan.1991) (noting that class actions maintained pursuant to Rule 23(b)(2) do not require individual notice and are subject only to the notice requirements of Rule 23(d)).

Pursuant to the notice published by defendants, members of the class who wished to object to the settlement agreement were required to do so by June 12, 2002. Objecting class members were also required to appear at the fairness hearing, scheduled for July 3, 2002, personally or through counsel. No objections were made and no class members appeared at the hearing.

## II. DISCUSSION

### A. Final Approval of the Settlement Agreement

Pursuant to Rule 23(e), a class action may not be "dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." This rule is to ensure the protection of "absent class members who were not involved in the negotiations leading to settlement." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 225 (5th Cir.1981).

While Rule 23(e) does not speak to the standard under which a settlement agreement should be reviewed, the Tenth Circuit has held that the settlement must be "fair, reasonable, and adequate." *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir.1984). *See also Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir.1993). In making this determination, the court must consider the following:

(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgement of the

parties that the settlement is fair and reasonable.

*Lopez v. City of Santa Fe*, 206 F.R.D. 285, 288 (D.N.M.2002) (quoting *Jones*, 741 F.2d at 324).

As mentioned above, notice of the pending class action and settlement agreement was achieved through publication in numerous newspapers throughout the state. Class members were notified of the pending settlement agreement and were informed of their right to object to the agreement. Despite the opportunity to object, no objections were made. Regardless of this lack of opposition, the court has approached its task of approving the final settlement agreement mindful of its role as guardian for the absent parties.

### 1. Settlement was Fairly and Honestly Negotiated

■ The court finds that the settlement was negotiated fairly and honestly. In so finding, the court notes that settlement was reached after arm's-length negotiations and with the assistance of mediation conducted by Magistrate Judge James O'Hara. Settlement was negotiated by experienced counsel for the class and the settlement reflects that the interests of the class were given adequate consideration and protection during the settlement phase.

### 2. Existence of Serious Questions of Law and Fact

The court finds at the time of the settlement, there were serious, complex issues placing the ultimate outcome of the litigation in doubt. While the state had repealed the statutes authorizing the fee that allegedly violated the ADA, Kansas Statutes Annotated §§ 8–1,124 *et seq.*, the statute allowing county treasurers to collect service fees for issuance of disabled parking placards and identification cards, Kansas Statutes Annotated § 8–145d, was still in force at that time.[1] Settlement of this case eliminates the difficulties in determining the ultimate outcome of this litigation.

### 3. Value of Immediate Recovery

This lawsuit has been pending for almost six years. Counsel for both sides have expended vast amounts of time and resources in litigating this case. Considering the current state of the law-namely plaintiffs' inability to recover monetary damages from the State of Kansas for violations of Title II of the ADA[2]-the value of immediate recovery far outweighs the possibility of future recovery. The settlement agreement has substantially achieved the desired outcome. There is no longer a charge for identification cards and placards, which allow persons with disabilities to park in designated parking places. Plaintiffs could not have received a better resolution had the ligation continued.

### 4. Judgment of the Parties that the Settlement is Fair and Reasonable

■ Counsel for both the class and the defendants have represented to the court that they believe the settlement is fair and reasonable. When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. *See Trief v. Dun & Bradstreet Corp.*, 840 F.Supp. 277 (S.D.N.Y.

---

1. This statute has now also been appealed.

2. In addition to declaratory and injunctive relief, plaintiffs originally sought reimbursement for fees paid for parking placards and identification cards, but due to recent developments in the law, plaintiffs now seek only injunctive and declaratory relief. *See Thompson v. Colorado*, 278 F.3d 1020 (10th Cir. 2001) (holding Title II of the ADA did not validly abrogate states' 11th Amendment immunity).

1993) ("[A]bsent evidence of fraud or over-reaching, courts consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel."). Counsels' judgment as to the fairness of the agreement is entitled to considerable weight. *See Law v. National Collegiate Athletic Ass'n,* 108 F.Supp.2d 1193, 1196 (D.Kan.2000).

As a result of the above findings, the court finds the settlement agreement is "fair, reasonable, and adequate." Consequently, the parties' settlement agreement shall be approved.

### B. Attorneys' Fees

Where a plaintiff prevails in an ADA case, recovery of attorneys' fees, costs, and expenses is permitted. *See* 42 U.S.C. § 12205. While plaintiffs' success in this case cannot be measured in monetary terms, plaintiffs did succeed in that defendants discontinued the activity which plaintiffs contended violated the Title II of the ADA. As such, plaintiffs have requested an award of fees in the amount of $135,000. Pursuant to the settlement agreement, defendants did not contest the fee request. The class members were notified that the court would award reasonable attorneys' fees and, as mentioned previously, no objections were filed as to the fee award.

 Despite the uncontested status of the fee request, the court may only award reasonable attorneys' fees. In assessing the proper fee award, the court must arrive at a lodestar figure by multiplying the hours counsel reasonably spent on the matter with a reasonable hourly rate. *Ellis v. University of Kansas Med. Ctr.,* 163 F.3d 1186, 1202 (10th Cir.1998). Plaintiffs bear the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1249–50 (10th Cir.1998).

As discussed below, plaintiffs have complied with this burden.

### 1. Reasonable Hours Expended

Plaintiffs' counsel Robert Fegers, Stephen Senn, and John Miller submitted thorough affidavits containing billing statements detailing 1,032.85 hours expended in prosecuting this case. The billing records indicate that these hours were spent from June 13, 1996, to April 25, 2002. As noted above, defendants do not contest this figure.

After proper review, the court finds the hours submitted by class counsel are sufficiently specific and adequately supported by contemporaneous time records. Defendants raise no arguments for adjusting counsels' submitted hours and the court knows of none, so class counsel is entitled to fees for all hours billed.

### 2. Reasonable Rates

 To determine a reasonable rate of compensation, the court must "determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983) *overruled on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). Because the litigation occurred in Topeka, Kansas, the relevant inquiry concerns the rates that lawyers of comparable skill and experience charge in the Topeka area. *See Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (noting a court is to look "to the prevailing market rates in the relevant community" in calculating a reasonable fee). Once again, the burden is on plaintiffs "to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those pre-

vailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895 n. 11, 104 S.Ct. 1541. Neither party presents evidence of the prevailing market rates in the Topeka area.[3] In the absence of adequate evidence of prevailing market rates, the court may rely on other relevant factors including its own knowledge to establish the rate. *See Case,* 157 F.3d at 1257 (citing *Lucero v. City of Trinidad,* 815 F.2d 1384, 1385 (10th Cir.1987)).

■ Plaintiffs' counsel is requesting an hourly rate of $121.87 per hour. Each plaintiffs' counsel is a seasoned attorney with many years of civil litigation experience. The court finds $121.37 is in accord with the prevailing market rates in Topeka for similar litigation. *See Godinet v. Management and Training Corp.,* 182 F.Supp.2d 1108, 1113 (D.Kan.2002) (allowing hourly rate of $115–$175 in Topeka, Kansas in a Title VII case).

The lodestar figure, based on the above findings, is $125,873.43. The court finds this figure constitutes a reasonable fee award. Consequently, plaintiffs will be awarded $125,873.43 in attorneys' fees.

### 3. Costs

Plaintiffs also request reimbursement for $9,126.58 in costs and expenses. Defendants raise no objection regarding plaintiffs' counsels' reported costs. The court has reviewed the expenses submitted by plaintiffs' counsel and finds they are appropriate and reasonable. Therefore, plaintiffs' counsel will be awarded $9,126.58 in costs. Plaintiffs' total fee award will be $135,000.

**IT IS THEREFORE BY THIS COURT ORDERED** that the settlement agreement shall be given final approval by the court. The court finds that the settlement agreement is fair, reasonable, and adequate.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion for Award of Attorney's Fees and Expenses (Doc. 117) is granted. The court does hereupon award to plaintiffs' counsel attorneys' fees, costs, and expenses in the amount of $135,000.00. Defendants shall transmit a remittance in the amount of $135,000.00 to plaintiffs' counsel, John J. Miller, Esquire, 4770 North Belleview, Suite 202, Kansas City, Missouri 64116 within thirty-five (35) days from the date hereof, and upon the plaintiffs' attorneys advising defendants' attorney of federal identification numbers.

**IT IS FURTHER ORDERED** that pursuant to the parties' settlement agreement and stipulation for judgment, this proceeding is hereby dismissed with prejudice as to the named plaintiffs and all class members and as to the named defendants.

---

**3.** Plaintiffs attached the affidavit of Thomas Franklin, an attorney practicing for twenty years in Kansas City, Missouri. Mr. Franklin asserts that a proposed hourly rate of $121.87 is less than the rate of $150 that is customary for the area. In is unclear, however, whether Mr. Franklin is referring to the Kansas City market or the Topeka market.