**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 11 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

———————————————

KHAMMOUNG PRASEUTH,

      Plaintiff - Appellee-
      Cross-Appellant,

v.

RUBBERMAID, INC.,

      Defendant-Appellant-
      Cross-Appellee.

No. 03-3147, 03-3160
No. 03-3298, 03-3299

———————————————

**APPEALS FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 00-1378-JTM)**

———————————————

Gerald B. Determan of Zampi and Associates, San Diego, California, (Dwight A. Corrin of Wichita, Kansas, with him on the brief), for Plaintiff-Appellee and Cross-Appellant.

Terry L. Mann (David S. Wooding and Deena Hyson Bailey, with her on the brief), of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., Wichita, Kansas, for Defendant-Appellant and Cross-Appellee.

———————————————

Before **McCONNELL, McKAY,** Circuit Judges, and **FRIOT,** District Judge.[*]

———————————————

**FRIOT**, District Judge.

———

    [*] The Honorable Stephen P. Friot, United States District Judge for the Western District of Oklahoma, sitting by designation.

This is an employment discrimination case brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the Act or the ADA), and the Kansas Act Against Discrimination, K.S.A. § 44-1001 *et seq*. The plaintiff also alleged fraud and breach of implied contract. The district court granted defendant summary judgment on the fraud claim prior to trial. At the close of plaintiff's evidence, the district court granted defendant's motion for judgment as a matter of law on the breach of implied contract claim, a ruling which has not been challenged on appeal. Ms. Praseuth's ADA claims were tried to a jury, which rendered a verdict in her favor and awarded damages. Rubbermaid appeals that verdict (No. 03-3147) and Ms. Praseuth cross-appeals (No. 03-3160). We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

There is also an appeal (No. 03-3298) and a cross-appeal (No. 03-3299) concerning the correctness of the district court's award of attorneys' fees. Ms. Praseuth filed a motion seeking attorneys' fees in the amount of $1,011,280.00 plus expenses in the amount of $132,639.00. The district court reduced the amounts requested by approximately two-thirds, awarding Ms. Praseuth attorneys' fees of $336,025.50 and expenses of $97,581.11. Rubbermaid appeals the fee award as too high and Ms. Praseuth cross-appeals asserting that it is too low. We affirm the fee award.

We address the merits-related appeal and cross-appeal in Part I of this opinion. In Part II, we address the appeal and the cross-appeal as to the attorneys' fee award.

-2-

**I.**
**The Appeals on the Merits**
(No. 03-3147 and No. 03-3160)

Plaintiff Khammoung Praseuth was a production worker at one of defendant

Rubbermaid, Inc.'s two Winfield, Kansas plants. She worked at Rubbermaid for 19

years, from October of 1980 until she was terminated in January of 2000. The plant

manufactures coolers, jugs, and other household products. A production worker's duties

typically include operating various manufacturing machines, trimming, decorating,

assembling, cleaning up, and packing parts. Ms. Praseuth alleges that she was

discriminated against on the basis of her disability, idiopathic thrombocytopenia purpura

(ITP), a condition she describes as a permanent blood and lymph node disease which

causes increased risk of spontaneous and prolonged bleeding when injured. Because of

her ITP, Ms. Praseuth's ability to use knives and other sharp objects is limited.

### A. Rubbermaid's Appeal

### 1. Sufficiency of the Evidence

Most of the issues raised in Rubbermaid's appeal challenge the sufficiency of the

evidence to support the jury's verdict in Ms. Praseuth's favor.[1] Specifically, Rubbermaid

---

[1] Buried in the portion of Rubbermaid's appeal brief which addresses the sufficiency of the evidence are some objections to the jury instructions, none of which were brought to the attention of the district court. Contentions regarding error in the jury instructions may be treated as waived if not brought to the attention of the trial court. *See*, Bell v. Mickelsen, 710 F.2d 611, 615-16 (10th Cir. 1983) (problems with jury instructions must be brought to the attention of the trial court or else issues may not be

(continued...)

challenges the district court's denial of Rubbermaid's motion for judgment as a matter of law on Ms. Praseuth's ADA claims. We review de novo a grant or denial of judgment as a matter of law. *Sheets v. Salt Lake County*, 45 F.3d 1383, 1387 (10th Cir.), *cert. denied,* 516 U.S. 817 (1995). To overturn a denial, we must conclude that, viewed in the light most favorable to the non-moving party, the evidence and all reasonable inferences to be drawn from it point but one way, in favor of the moving party. *Id*.

The elements of a cause of action under the ADA are stated in *Poindexter v. Atchison, Topeka and Santa Fe Railway Co.*, 168 F.3d 1228 (10th Cir. 1999).

> The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. §12112(a). A qualified individual with a disability is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Therefore, to establish a viable claim under the ADA, a plaintiff must prove by a preponderance of the evidence that (1) she has a disability; (2) she is qualified for the position; and (3) her employer discriminated against her because of her disability.

*Id*. at 1230. Title 42 U.S.C. § 12102(2) provides, in pertinent part, that: "The term 'disability' means, with respect to an individual – (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Rubbermaid argues that the evidence is insufficient to support the verdict with respect to

---

[1] (...continued)
preserved for review). Rubbermaid has waived the objections it now asserts to the effect that the jury instructions failed to designate which major life activities were appropriate for consideration, that the instructions incorrectly included the ability to have sexual relations as a major life activity, and that the district court improperly allowed the jury to render a verdict on front pay damages.

many of these elements.

Rubbermaid's first argument is that there is insufficient evidence to support a determination that Ms. Praseuth was a qualified individual with a disability because there is insufficient evidence that she is substantially limited in the major life activities of working or performing manual tasks.

When the major life activity under consideration is that of working, the statutory phrase "substantially limited" requires, at a minimum, that plaintiff be unable to work in a broad class of jobs. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999). Plaintiff's expert witness, Wilbur Swearingin, testified, on the basis of his evaluation of Ms. Praseuth's occupational abilities, that her "potential occupational base" was substantially reduced by her impairments. His testimony on this point was detailed and was supported by his description of the workplace ramifications of Ms. Praseuth's condition. This testimony, if credited by the jury, would clearly support a finding that Ms. Praseuth's ITP precluded her from performing a very substantial array of the jobs for which she would otherwise have been qualified. Thus, we find ample evidence from which the jury could have found that, given the effects of Ms. Praseuth's ITP, she was substantially limited in the major life activity of working. This conclusion makes it unnecessary to consider the sufficiency of the evidence concerning Ms. Praseuth's inability to perform manual tasks.

Rubbermaid's next main argument is that the evidence is insufficient to support a

finding that Ms. Praseuth could perform the essential functions of her job, specifically, knife-use or position rotation.

As described by Rubbermaid, the company's position rotation policy required employees to work in 50% of the positions on the production line. Employees were required to move to a different position every hour. There was testimony that the policy was implemented in an effort to limit repetitive motion injuries and that it was successful in accomplishing that laudable goal. The policy also allowed rotation into and out of the most physically demanding positions, thus, it had the additional benefit of dividing the burden of the more physical jobs among the production workers.

There was evidence from which the jury could have found that Ms. Praseuth was able to comply with this position rotation policy, even without accommodation. There was evidence that 50% of the positions on the production line did not require knife-use so that she could have rotated into the necessary number of positions. For example, there was testimony that on at least one occasion "[t]here were very few people using knives," "[l]ike only one person in the [work] cell would be using a trimmer, a knife...." There was also evidence that on a particular day when one witness was observing activity in the plant, if there were four people working in a cell, then only one of them was using a knife while the other three were performing other duties not using a knife. There was evidence that this witness saw no cells where over half of the employees used a knife at the same time. There was evidence that there might be three or four positions on a particular

machine which did not require knife-use, for example, one position might use a knife or hammer to remove the product from the flashing after it came out of the mold, another position might stick on a label, another might hook on the lid, another might put the product in a packing box, and another might carry the packed box to be organized for shipping and receiving.

There was also testimony from an experienced Rubbermaid operations manager that, depending on the product being produced, anywhere from 47.5 % of the machines to 71.25 % of the machines in the production line did not require knife-use. There was also evidence that the safety supervisor stated that about 60% of the positions on the production line did not require a knife.

There was testimony that despite her restrictions against knife-use, Ms. Praseuth worked on machine nos. 104, 109, 110 and that she might have also worked on machine nos. 118, 119, 105, 107, as well as additional machines, and that she may have also performed re-work and cleaning duties. There was evidence that for the five- or six-year period during which Ms. Praseuth actually worked on the production line without rotating, her inability to rotate to certain positions never kept her supervisor from meeting the company's operating goals or objectives.

Rubbermaid's human resources manager testified that if, during a test walk-around, Ms. Praseuth had been given the opportunity to show she could work 50% of the positions, there was "a possibility" that on some days she would have been able to meet

the 50% requirement. There was testimony that the results of an employee's 50% walk-around test could vary, depending on what machines were running and which products were being manufactured on any given day.

Recognizing that our review begins and ends with a determination of whether there was evidence from which a jury could reasonably have found in favor of Ms. Praseuth on this fact-bound issue, we conclude that there was sufficient evidence from which the jury could have determined that knife-use was not required in 50% or more of the positions on the production line, and that Ms. Praseuth could have, therefore, rotated into 50% of the positions. Accordingly, we find sufficient evidence to support a jury finding that despite the limitations on her knife-use, Ms. Praseuth was qualified for the job because she could perform the job's essential functions, including rotation, even without accommodation.

Rubbermaid's third major argument as to the sufficiency of the evidence is that there is no evidence that the company could have reasonably accommodated Ms. Praseuth's disability. Having determined that there was evidence showing that Ms. Praseuth was qualified for the job in question even without accommodation, it is unnecessary to review the evidence regarding reasonable accommodations. However, we note that there was evidence that Ms. Praseuth could have used a hammer with a scraper instead of a knife in some of the positions which did require knife-use. For example, Ms. Praseuth testified that she used a hammer and scraper from 1993 to 1996. Other witnesses testified that hammers could sometimes be used instead of knives.

Finally, Rubbermaid challenges the sufficiency of the evidence to support the damage award.

Ms. Praseuth's W-2 form for 1998 showed an annual salary of $23,524. Rubbermaid's human resources manager testified that annual benefits are the equivalent of 40% of an employee's salary. This evidence brings the value of Ms. Praseuth's annual salary package, as of 1998, to nearly $33,000. As Rubbermaid has waived any objections to the jury's determination of lost front pay, *see* n.1, *supra*, we presume that the $200,000 includes damages for both back pay and front pay. With that presumption, the amount of the award is well supported by the evidence.

Rubbermaid also argues, almost in passing, that the award is improper because Ms. Praseuth failed to mitigate her damages. The argument centers on Rubbermaid's interpretation of the evidence concerning Ms. Praseuth's future earnings prospects – in terms of what she could realistically have expected to have earned (i.e., the gross earnings loss) and what she could and should have earned (i.e., the reduction resulting from application of the duty to mitigate). The evidence of Ms. Praseuth's efforts by way of mitigation of damages (evidence that she applied for several jobs, searched classified job advertisements, and made monthly visits to the Kansas Job Services Offices) was sufficient to preclude interference with the jury's determination, with the aid of the trial court's instruction on mitigation, of the amount of her compensatory damages.

Rubbermaid argues that the jury improperly awarded $50,000 for emotional pain

and mental anguish. Ms. Praseuth testified that she experienced a variety of depressive symptoms including an inability to eat and sleep, and that she had thoughts of suicide. Joseph Westermeyer, M.D., a psychiatrist, testified that Ms. Praseuth suffered from a major depressive disorder which caused her to lose sleep and have suicidal thoughts. We find substantial evidence to support Ms. Praseuth's $50,000 award for emotional pain and mental anguish. *See*, Baty v. Willamette Industries, Inc., 172 F.3d 1232, 1244 (10th Cir. 1999) (damages for mental anguish upheld based on plaintiff's assertions and psychological expert's testimony).

### 2. Exclusion of Evidence

Rubbermaid also contends that the district court erred when it refused to admit applications and other documents relating to Ms. Praseuth's claims for short-term and long-term disability insurance and Social Security disability benefits. Rubbermaid argues that exclusion of this evidence was error because, in the excluded documents, Ms. Praseuth stated that she was totally disabled and unable to work. Rubbermaid sought to introduce these documents to show Ms. Praseuth's inability to perform the essential functions of her job and her ability to mitigate her damages by seeking disability benefits, as well as to cast doubt on her credibility given the asserted inconsistencies among her various statements and testimony.

The admission or exclusion of evidence is a matter within the discretion of the trial court and the trial court's decision is not reversed except for an abuse of discretion.

-10-

Hinds v. General Motors, 988 F.2d 1039, 1049 (10th Cir. 1993). Even if there is an error in the admission or exclusion of evidence, this court will not set aside a jury verdict unless the error prejudicially affects a substantial right of a party. *Id*. The effect on the jury is only prejudicial if it can be reasonably concluded that the admission or exclusion made a difference. *Id*.

Ms. Praseuth responds to Rubbermaid's contentions by noting that some of the documents were actually presented to the jury through Rubbermaid's exhibits. She also argues that Social Security disability claims and the disability discrimination claims raised under the ADA and the Kansas Act are of a fundamentally different nature. Ms. Praseuth cites *Cleveland v. Policy Management Systems*, 526 U.S. 795, 803 (1999), an ADA case which considered the effect of the plaintiff's statements made in disability filings on the defendant's motion for summary judgment. Rubbermaid responds to these arguments by stating that most of the documents were not admitted at trial and by arguing that *Cleveland* does not mandate exclusion of the documents in question.

While we agree with Rubbermaid that *Cleveland* does not mandate exclusion of the disability documents at trial, we also conclude that *Cleveland* does not necessarily mandate their admission. We recognize, as the district court did, that given the different types of disabilities relevant in various contexts, the documents in question might have created jury confusion, at least in the circumstances of this case, so that it was not an abuse of discretion to exclude them. We also conclude that no showing has been made

-11-

that admission of the documents would have resulted in a different verdict. For both of these reasons, we conclude that excluding the documents was not error.

## B. Khammoung Praseuth's Cross-appeal

Plaintiff Khammoung Praseuth cross-appeals on three issues. Her brief describes these issues in overly broad terms[2] as: "Whether Appellant is liable for punitive damages; Whether Ms. Praseuth's employment was terminated by fraud; and Whether Appellant's duty policy violates the ADA on its face."

### 1. Punitive Damages

Stated more precisely, the first issue raised by Ms. Praseuth is whether the district court erred when it granted Rubbermaid's Rule 50 motion and entered judgment as a matter of law in Rubbermaid's favor on plaintiff's claims for punitive damages.

Whether sufficient evidence exists to support punitive damages in an ADA case is a question of law which is reviewed de novo. *Bartee v. Michelin North America, Inc.*, 374 F.3d 906, 913-14 (10th Cir. 2004). An ADA plaintiff may seek punitive damages if the employer acted with "malice or with reckless indifference to the plaintiff's federally

---

[2] Ms. Praseuth only vaguely describes the specific rulings of the district court which she now claims were error. For example, she refers to rulings as dismissals, although the record indicates the challenged rulings were granted motions for judgment as a matter of law. Furthermore, her appeal brief does not propose any standard for reviewing the challenged rulings. This failure to state contentions with particularity and to propose the appropriate standard of review is sufficient grounds, standing alone, to deny Ms. Praseuth's cross-appeal. *See*, Fed. R. App. P. 28(a)(9)(B), requiring, "for each issue, a concise statement of the standard of review."

protected rights." *Id.*, citing *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 535 (1999) and *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1244 (10th Cir. 1999) (applying *Kolstad* standard to an ADA case). To satisfy this standard, the employer must engage in prohibited conduct with knowledge that it may be acting in violation of federal law, not mere awareness that it is engaging in discrimination. *Bartee*, 374 F.3d at 914. Thus, as recognized in *Bartee* and *Wal-Mart*, both of which apply the Supreme Court's decision in *Kolstad*, an award of punitive damages requires a higher standard of intentionally illegal discriminatory conduct than is required for compensatory damages.

While Ms. Praseuth argues that different standards of malice and recklessness apply depending upon whether the plaintiff's theory of liability is vicarious or direct, the crucial point remains: to be entitled to punitive damages under either theory of liability, a plaintiff must present evidence which satisfies *Kolstad*'s higher standard of intentionally illegal discriminatory conduct. *Kolstad* explains that this higher standard means, for example, that even if an employer might be found to have intentionally discriminated for other purposes under the ADA, if the employer reasonably believes its actions satisfy a bona fide occupational qualification defense or a statutory exception to liability, then punitive damages are not recoverable. *Kolstad*, 527 U.S. 526, 537; *EEOC v. Wal-Mart*, 187 F.3d 1241, 1246 at n.3.

When it granted Rubbermaid's motion for judgment as a matter of law on Ms. Praseuth's punitive damage claims, the district court stated as follows.

-13-

There may be information in there that you find is contrary to the way Mrs. Praseuth was treated. I don't feel that way. You know, you still have a tough row to hoe to win your ADA claim. The fact is I think any reasonable objective look at the evidence would indicate that Rubbermaid not only did not treat Mrs Praseuth shabbily...they put her on leave for a year in an effort to try and let her get her condition taken care of. She elected not to have a splenectomy, which might have solved her problem altogether and eliminated the problem with ITP. At the end of the year she still had those restrictions, and she was treated just like every other employee in terms of her employment.... I think a pretty good argument could be made that they hung with her a lot longer than a lot of other employers would have and still comply with the law.

* * *

[Y]ou'll note as you look through the [proposed jury] instructions, I heard absolutely no evidence that would indicate any malice or ill will on the part of Rubbermaid. The issue of punitive damages is gone from the case also. What we are left with is the ADA claim here...."

As these statements indicate, the district court correctly recognized that different standards apply to liability for compensatory damages and punitive damages under the ADA. Like the district court, we find no evidence that Rubbermaid acted either with malice or reckless indifference with respect to Ms. Praseuth's federally protected rights or that it engaged in prohibited conduct with the knowledge that it may have been acting in violation of federal law. We conclude that there was insufficient evidence to support submission of punitive damages and that the district court's grant of Rubbermaid's Rule 50 motion was not error.

## 2. Fraud

Ms. Praseuth also asserts that the district court erred when it granted summary

judgment in Rubbermaid's favor on her fraud claims.

We review the grant of summary judgment de novo, using the same standard applied by the district court. *Universal Money Ctrs. v. American Telephone & Telegraph*, 22 F.3d 1527, 1529 (10th Cir. 1994), citations omitted. Summary judgment is appropriate if the record evidence shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, we examine the factual record (together with any reasonable inferences to be drawn therefrom) which were before the district court at the summary judgment stage of the proceedings, all in the light most favorable to the non-moving party. *Universal Money Ctrs.*, 22 F.3d at 1529, citations omitted.

In its order granting summary judgment, the district court concluded that the essence of plaintiff's fraud claims was that she was fired, at least in effect, in January 1999, but that Rubbermaid fraudulently failed to so inform her at that time. Ms. Praseuth now argues that the district court fundamentally misunderstood her fraud claims, which she says were not predicated upon a claimed false representation of her employment status, but on her claim that she was improperly placed on temporary disability status when management knew that she was permanently disabled. She claims this resulted in her failure to ask for a walk-around at the time to see if she could work in 50% of the positions and kept her from seeking legal advice which could have avoided her termination, all of which kept her from pursuing other gainful employment which she

-15-

otherwise would have sought early on had she known defendant intended to ultimately fire her under the wrong policy.

The convoluted nature of Ms. Praseuth's arguments underscores this court's conclusion that her fraud damages are entirely speculative. Moreover, we agree with Rubbermaid that fraud claims of the specific nature now described by Ms. Praseuth on appeal were not clearly presented to the district court at the summary judgment stage. We reject Ms. Praseuth's attempt to allege new and more specific fraud claims on appeal than were presented to the district court.

### 3. Policies as Per Se Violations of the ADA

Ms. Praseuth's third contention on appeal is that the district court incorrectly denied her motion for summary judgment on her claim that Rubbermaid's policies constituted a per se violation of the ADA.

The district court's ruling denying Ms. Praseuth summary judgment on this claim did not reach the merits of the issue but merely concluded that Ms. Praseuth was not entitled to judgment as a matter of law until she established standing under the ADA by showing that she was a person aggrieved by one of the policies which she challenged as facially discriminatory. Finding that questions of material fact existed as to whether Ms. Praseuth had standing to raise this claim, the district court concluded that Ms. Praseuth could not prevail at the summary judgment stage on her claim that the company's policy, on its face, violated the ADA. This ruling, which did not address the merits of the

-16-

argument and was only preliminary, is not an appealable order. *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir. 1992) (even if summary judgment was erroneously denied, the proper redress would not be through appeal of that denial but through subsequent motions for judgment as a matter of law and appellate review of those motions if they were denied). Ms. Praseuth has not identified a final, appealable ruling with respect to this issue. Consequently, she has waived it.

## C. Conclusion

We conclude that neither party has presented any basis for reversal on the merits. We accordingly AFFIRM the district court's judgment on the merits.

## II.
## The Appeal and Cross-Appeal as to the Award of Attorneys' Fees
(No. 03-3298 and No. 03-3299)

The parties have raised approximately 35 different grounds of objection to the district court's fee award order, which granted attorneys' fees to Ms. Praseuth's attorneys but in an amount substantially reduced from the amount sought. Nearly all of the parties' fee-related contentions are attacks on various facets of the district court's factual findings, which amounted to nothing more than determinations of reasonableness – determinations made with the benefit of a degree of familiarity with trial court proceedings we cannot hope to match. Although we have considered all of the points urged in the briefs, it would serve no purpose to discuss most of those points here. We will, however, address a

few issues of particular significance.

## A. Standard of Review

We review an award of attorneys' fees for abuse of discretion. *Brandau v. State of Kansas*, 168 F.3d 1179, 1181 (10th Cir. 1999). While the district court's legal analysis underpinning the fee award is reviewed de novo, we will reverse the district court's factual findings only if we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. *Id*. The district court has an inherent advantage in passing on a fee request given its familiarity with the proceedings below. Moreover, deference is especially appropriate in this action, where the parties' conflicting positions regarding a proper fee award required the district court to assess the need for a great deal of motion work.

## B. Reasonableness of Attorney Hours

A party who prevails on an ADA claim is permitted recovery of attorneys' fees, costs and expenses. 42 U.S.C. § 12205; *Marcus v. State of Kansas*, 209 F. Supp. 2d 1179 (D. Kan. 2002). The proper procedure for determining a reasonable attorneys' fee is to arrive at a lodestar figure by multiplying the hours plaintiff's counsel reasonably spent on the litigation by a reasonable hourly rate. *Case v. Unified School Dist. No. 233, Johnson County*, 157 F.3d 1243, 1249 (10th Cir. 1998). The fee applicant should exercise billing judgment with respect to the number of hours worked and billed. *Hensley v. Eckerhart*,

461 U.S. 424, 437 (1983).  Billing judgment consists of winnowing hours actually expended down to hours reasonably expended.  *Case*, 157 F.3d at 1250.

The trial judge is not obligated to accept the fee applicant's billing judgment uncritically.  Indeed, fee awards under federal fee-shifting statutes come under close scrutiny.  *Mann v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir. 1995).   In contrast to a private fee agreement between a party and his attorney in which a party may agree to an aggressive litigation strategy and the inevitably resultant higher fees, a fee-shifting statute is not a voluntary matter.  Fee-shifting imposes one party's fee obligations upon the very party who was the subject of that litigation strategy.  Thus, awards made under the authority of fee-shifting statutes are not intended to replicate fees which an attorney could earn through a private fee arrangement with a client.  *Id.*

In reviewing the order which spawned the appeal and cross-appeal on the attorneys' fee issues, we are also mindful that the inquiry into whether the claimed fee is reasonable does not end with the multiplication of the number of hours reasonably expended by the hourly rates found to be reasonable.  *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005).  Other factors are also relevant, including the reasonableness of the fees in light of the success obtained, which requires the district court to consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Hensley*, 461 U.S. at 435.

Ms. Praseuth's attorneys requested fees for over 200 hours spent during the six

-19-

months prior to the commencement of this litigation doing background research and educating themselves generally about the ADA. These hours included time for work described as follows: "Skimmed and reviewed first six chapters of Cal Practice Guide, Federal Civil Procedure Before Trial, to refresh on federal rules and law," and "Reviewed Chapters 7 through 10 and Chapter 11 in the Rutter Group Treatise Federal Civil Procedure in Before Trial ... preparation for litigation." Ms. Praseuth's attorneys devoted 50 hours to drafting the EEOC charge. They spent 160 hours drafting the complaint. They then filed a motion to amend the complaint, expending over 42 hours on the amendment.

The practice of spending large amounts of time for relatively straightforward, discrete tasks continued throughout the litigation. One example is the 119 hours spent by Ms. Praseuth's attorneys on mediation-related work. Those 119 hours – which, at a rate of $150 per hour, have a value of $17,850 – include time spent conferring about the mediation schedule, writing a mediation brief, and meeting with the client's daughter to go over potential settlement numbers. Despite all of this preparation, the mediation ultimately failed when Ms. Praseuth made a single settlement offer – in the amount of $11 million. The offer was based on damage calculations which Ms. Praseuth's attorneys now admit were incorrect, and obviously so, given that Ms. Praseuth subsequently amended her damage claims to $6.4 million. In short, the time claimed for the mediation is a prime example of the excesses which the trial court had to take into account in evaluating the

-20-

reasonableness of the total amount of time for recompense was sought.

The California law firm which represented Ms. Praseuth along with her local counsel in Wichita, Kansas, claimed 3,195 hours for work by a newly licensed lawyer over a 27-month period. At the associate's allowed rate of $150 per hour, the charge for her time alone had a claimed value of $479,250. The California firm also claimed hours for time spent bringing attorneys up to date about the case as attorneys began work on the file for the first time. For example, attorney hours were claimed for time spent "to discuss case and update" and "to discuss status."

As indicated by the fact that the trial covered eight days and required 32 witnesses to be called, this case was, in some respects, more demanding than a garden variety, single-plaintiff employment case. Nevertheless, time spent reading background material designed to familiarize an attorney with an area of law is presumptively unreasonable. *Case*, 157 F.3d at 1253. When counsel is inexperienced, a losing party should not be obligated to pay for that counsel's legal education. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202-05 (10th Cir. 1986) (it is appropriate to reduce the hours expended due to the inexperience of an attorney which has led to overbilling). A district court may further reduce the hours awarded if the number of hours claimed by counsel includes time for tasks that were unnecessary, irrelevant and duplicative. *Case*, 157 F.3d at 1250. Applying these principles, it is clear that the number of hours claimed by Ms. Praseuth's attorneys was unreasonable by any standard.

Rubbermaid argues that Ms. Praseuth's attorneys' compensable hours should have been reduced beyond the reductions made by the district court because the fee award includes compensation for too much time spent on unsuccessful claims. The district court found, and we agree, that plaintiff's claims involved a common core of facts or related legal theories. Successful litigants may, in good faith, raise alternative legal grounds for a desired outcome and the court's rejection or failure to reach certain grounds does not require reduction of the fee. *Hensley*, 461 U.S. at 435. The time identifiably spent on unsuccessful claims is fair game for elimination if those claims were "distinct in all respects from the successful claims." *Chavez*, 396 F.3d at 1103. The district court's order clearly demonstrates that the issue of attorney hours spent on unsuccessful claims was taken into account when that court made its discretionary reductions in the number of compensable hours and we find no error in the district court's handling of that issue.

In a detailed and well supported eleven-page order, the district court explained the reasons for its reduction of the hours claimed by Ms. Praseuth's attorneys. The district court was not required to identify and justify each disallowed hour, and there is no requirement that district courts announce what hours are permitted for each legal task. *Case*, 157 F.3d at 1250. The district court's reduction of the claimed fees was general in nature; we presume that it properly took into account the excessiveness of the fee request with regard to all of the matters we have touched upon here. We conclude that the district court's reduction was based on correct principles of law and that the court's

determinations as to the allowance and disallowance of hours for which compensation was sought were well within the court's discretion.

## C.  Attorneys' Hourly Rates

Rubbermaid challenges some of the rates allowed by the district court for associate attorneys working with the California law firm.  While a party is free to select counsel from any locality, absent a clear showing that the matter could not reasonably have been handled by counsel from the locality, rates above the prevailing local hourly rates should not be applied.  *See*, *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (every major metropolitan area has numbers of lawyers who can handle all but the most unusual civil rights cases so the appropriate rate is based on the norm for comparable private firm lawyers in the area in which the court sits).  Recognizing this principle, the district court determined the applicable hourly rates, relying on its knowledge of rates for lawyers with comparable skill and experience practicing employment law in the Wichita, Kansas area. *See*, *Case*, 157 F.3d at 1256 (first step is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time).  We have been shown no basis upon which to disturb the district court's findings as to the hourly rates to be applied.

## D.  Expenses Included in Fees

Rubbermaid also challenges the district court's allowance of a number of expenses included in Ms. Praseuth's fee award.  These expenses were for services such as long

distance telephone charges, Federal Express deliveries, postage charges, photocopy charges, fees paid to investigative services, and other professional fees paid by the law firm. The district court explained that charges such as these, which include incidental and necessary expenses, are normally billed in addition to attorneys' hourly charges and should be included in fee allowances if the expenses are reasonable. *See*, *Ramos*, 713 F.2d at 556 (treating items that are normally itemized and billed in addition to the hourly rate as "other expenses" included in fee allowances in civil rights cases, if reasonable in amount); *Roe v. Cheyenne Conference Resort, Inc.*, 124 F.3d 1221 (10th Cir. 1997) (quoting 42 U.S.C. §12205 which provides that the "court...in its discretion, may allow the prevailing party...a reasonable attorney's fee, including litigation expenses, and costs...."). The district court allowed some of the claimed expenses completely, disallowed others completely, and allowed a portion of others. We find no error in the district court's treatment of any of the expenses for which reimbursement was sought.

E. Competing Excesses

As already noted, Ms. Praseuth's attorneys sought compensation for enormous amounts of time, including a truly remarkable number of hours spent on relatively straightforward tasks. Rubbermaid's attorneys, on the other hand, defended this action very aggressively on every conceivable front. After protracted proceedings memorialized by 531 docket entries in the district court record, the district judge found that "both the plaintiff and the defendants have engaged in an extreme and unnecessary amount of

briefing" in this case. Our own, first-hand knowledge of the parties' approach to this appeal amply supports the correctness of that finding.

Given the excesses on both sides of this case, the district court was called upon to avoid penalizing Rubbermaid by awarding fees for the huge amounts of time devoted to the matter by Ms. Praseuth's counsel; at the same time, the district court was called upon to avoid penalizing Ms. Praseuth by denying compensation for legal services necessitated by Rubbermaid's noticeably aggressive defense. We conclude that the district court's fee award appropriately balanced these competing considerations. An aggressive litigation strategy carries with it certain risks, one of which is that a party pursuing an aggressive strategy may, if it loses, find itself required to bear a portion of the attorneys' fees incurred by the *other* party in responding to that aggressiveness.

### F. Interest on Attorneys' Fees

Ms. Praseuth also argues that the trial court abused its discretion when it denied her motion for prejudgment interest on the attorneys' fees award. The trial court did so based on its determination "that the equities preclude such an award." The trial court made that determination with the benefit of its first-hand familiarity with the proceedings before it and against the backdrop of the extensive post-trial proceedings (on Ms. Praseuth's fee motion) that required the trial court to evaluate the degree to which each party was responsible for the extraordinarily protracted proceedings in the district court – proceedings which lasted three years from the filing of the complaint to the entry of the

order with respect to interest on attorneys' fees. As Ms. Praseuth acknowledges, an award of prejudgment interest on attorneys' fees is a matter addressed to the trial court's discretion, that discretion to be informed, in part, by the court's assessment of the equities of the situation before it. *Anixter v. Home-Stake Production Co.*, 977 F.2d 1549, 1554 (10th Cir. 1002). Ms. Praseuth has not demonstrated that, in denying prejudgment interest on the award of attorneys' fees, the trial court's assessment of the equities amounted to an abuse of discretion.

## G. Conclusion

The district court's order adequately considered and correctly applied the well known factors enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717 (5th Cir. 1974) as applicable to attorneys' fee awards. Finding no abuse of discretion, we AFFIRM the district court's fee award in all respects.

03-3147.wpd