**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 18, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARK V. THIERRY,

        Plaintiff-Appellant,

v.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION;
CARI M. DOMINGUEZ, Chair, Equal
Employment Opportunity Commission,

        Defendants-Appellees.

No. 04-6175
(D.C. No. 03-CV-78-L)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **SEYMOUR** , **McCONNELL** , and **TYMKOVICH** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mark V. Thierry appeals the entry of summary judgment in his discrimination suit against his employer, the Equal Employment Opportunity Commission (EEOC). We affirm.

I.

Thierry, a black male, began working for the EEOC in 1999 in the Oklahoma City Area Office. Two years later, he applied for promotion to either of two supervisory positions, but both positions were awarded to white males. In examining the facts relating to these hiring decisions, we construe the evidence in the record in the light most favorable to Thierry, as the party opposing summary judgment. See Praseuth v. Rubbermaid, Inc., 406 F.3d 1245, 1255 (10th Cir. 2005).

A. *The Harassment Investigations and the Ensuing Revelations*

In 2001, Thierry provided evidence during a series of investigations prompted by two sexual harassment complaints. Both of these complaints alleged misconduct on the part of Thierry's co-worker, Rubye Phillips. Although Thierry did not witness the alleged misconduct, his statements generally supported the complainants' characterization of Phillips as a person who behaved inappropriately in the office. An initial inquiry resulted in a recommendation that Phillips be fired, but the district director, Chester Bailey, rejected this

recommendation and ordered further investigation. Ultimately, Phillips was suspended for two weeks.

Partly as a result of these sexual harassment investigations, and partly through unrelated reports, Bailey learned about a rift in the Oklahoma City office. On one side of the rift were Phillips and various allies within the office. On the other side were Joyce Powers, who headed the office; the two harassment complainants; and several employees whom Powers allegedly favored, including Thierry. While the record contains conflicting information about how this rift developed, it is clear that Bailey believed Powers was at least partially at fault and that he did not trust her. See, e.g., R., Tab. 33, Ex. 2, at 1-2, 2 n.1 (memo from Bailey alleging deliberate misrepresentations by Powers).

The sexual harassment investigation also uncovered information about a shouting match between Thierry and a co-worker, Jimmy Jones. Once again, the record contains conflicting information about what occurred and which of the participants was at fault.

B. *Thierry's Unsuccessful Applications*

In March 2001, Thierry applied for two supervisory positions. Powers, who had supervisory authority over both of the open positions, recommended Thierry for the more senior post ("the GS-13 Position"), but Bailey, as hiring officer,

declined to accept this suggestion. Instead, he created an advisory panel consisting of Powers and two of her peers, Alma Anderson and Janet Elizondo.

In affidavits submitted in response to Thierry's discrimination complaint, Bailey and each member of the panel described the ensuing proceedings differently. Regarding the GS-13 Position, Bailey averred that he merely accepted the unanimous recommendation of the advisory panel in favor of an outside applicant named Donald Stevens. Anderson and Elizondo also stated that the panel agreed on Stevens; according to Elizondo's affidavit, which contains a more detailed description of the panel's deliberations, Stevens was a compromise choice suggested by Powers after the other panel members rejected Thierry. Powers, however, described the entire process differently, maintaining that the panel deadlocked over Thierry's application and consequently called Bailey to advise him that they could not agree on a selection. Bailey rejected Thierry–claiming he wanted an outside hire–and directed Powers to choose between Stevens and another candidate; Powers chose Stevens.

With respect to the second opening ("the GS-12 Position"), Bailey recounted that the panel gave him a mixed recommendation, with Anderson and Elizondo supporting Jim Habas while Powers said she could accept Habas but preferred Thierry; Bailey then reviewed the application materials from both candidates and chose Habas. Elizondo described the selection process in the same

-4-

manner, but Anderson characterized Habas as a consensus choice. For her part, Powers said she had recommended Habas for the GS-12 Position when she thought that Thierry would get the GS-13 Position, but she ultimately endorsed Thierry over Habas when the two went head-to-head for the GS-12 Position. According to Powers, Elizondo argued that Habas had more leadership experience (during the same conference call in which Bailey chose Stevens for the GS-13 Position), and Bailey promptly selected Habas.

## C. *District Court Proceedings*

After being denied the promotions he sought, Thierry filed an unsuccessful grievance within the EEOC, and then he initiated this lawsuit. His complaint alleged that the EEOC discriminated against him based on his race and his participation in the sexual harassment investigations involving Rubye Phillips.

On the EEOC's motion for summary judgment, the court found that Thierry had established a prima facie case of discrimination on both of the asserted grounds. The court further determined, however, that Bailey had offered neutral explanations for his decisions–namely, that Stevens and Habas were each supported by at least a majority of the selection panel, that selecting one of Powers's proteges would exacerbate the divisions within the Oklahoma City office, and that Thierry's altercation with Jones reflected poorly on Thierry's

fitness for a supervisory position. Concluding that Thierry had not rebutted these explanations, the district court granted judgment in favor of the EEOC.

II.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1); see also Cross v. The Home Depot, 390 F.3d 1283, 1286-88 (10th Cir. 2004) (addressing Title VII failure-to-promote claim). It is likewise unlawful to retaliate against an employee because the employee has "participated in any manner in an investigation, proceeding, or hearing" arising under Title VII. 42 U.S.C. § 2000e-3(a).

An employee may prove discrimination or retaliation by presenting direct evidence linking an adverse employment action to an unlawful motive. See Burns v. Bd. of County Comm'rs, 330 F.3d 1275, 1283 (10th Cir. 2003). Alternatively, the employee may rely on the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973):

> McDonnell Douglas first requires the aggrieved employee to
> establish a prima facie case of prohibited employment action. . . . If
> the employee makes a prima facie showing, the burden shifts to the
> defendant employer to state a legitimate, nondiscriminatory reason
> for its adverse employment action. If the employer meets this
> burden, then summary judgment is warranted unless the employee

-6-

can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.

Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005) (citations and quotations omitted).

As noted above, the district court granted summary judgment at the third stage of the McDonnell Douglas inquiry. We will follow a similar course. Specifically, we will accept for purposes of decision the district court's determination that Thierry established a prima facie case of discrimination and retaliation, and we will accordingly focus our analysis on the second and third steps of the McDonnell Douglas framework.

We review the district court's summary judgment determinations *de novo*, applying the same standard as the district court. See Praseuth, 406 F.3d at 1255. This standard requires us to examine the factual record in the light most favorable to the non-moving party (Thierry), drawing all reasonable inferences in his favor. See id. We will affirm the entry of summary judgment against Thierry if "the record evidence shows there is no genuine issue as to any material fact and that [the EEOC] is entitled to judgment as a matter of law." Id.

III.

Because Thierry is representing himself in this appeal, we must construe his brief liberally. See Cannon v. Mullin, 383 F.3d 1152, 1160 (10th Cir. 2004), cert. denied, 125 S. Ct. 1664 (2005). We conclude that Thierry has raised four claims:

(a)     The district court disregarded evidence that the EEOC's explanations for its actions were pretextual.

(b)     The district court disregarded evidence that Thierry was more qualified than the applicants who were selected for the positions that Thierry sought.

(c)     The district court should have granted summary judgment to Thierry on his retaliation claim because the EEOC improperly based its promotion decision on evidence acquired during sexual harassment investigations.

(d)     The district court disregarded direct evidence of retaliation and otherwise mishandled the summary judgment proceedings.

We will address each claim in turn.

A. *Evidence of Pretext*

Thierry's brief presents a litany of facts that the district court allegedly ignored in granting summary judgment. He contends that these facts refute the EEOC's proffered justifications for its actions–namely, that Bailey, as the decision-making officer, chose not to promote Thierry because he viewed Thierry as a Powers favorite whose elevation would exacerbate the rift within the Oklahoma City office, and because he was concerned about reports of a verbal altercation between Thierry and Jimmy Jones.

Thierry contends that, in the light of the evidence he produced, the district court should have ruled that the EEOC failed to meet its burden at the second stage of the McDonnell Douglas inquiry.  These reasons are, however, neutral on their face, which is all that McDonnell Douglas requires.  See Johnson v. California, ___ U.S. ___, 125 S. Ct. 2410, 2417-18, 2418 n.7 (2005) (explaining that a party defending its use of peremptory challenges can counter the opposing party's prima facie showing of discrimination by offering "a frivolous or utterly nonsensical justification," and noting that this principle also applies in the Title VII context).

Nevertheless, to the extent that Thierry's evidence suggests that the EEOC's explanations are pretextual, Thierry may rely on this showing of pretext to meet his burden at the third stage of the McDonnell Douglas inquiry.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000).

> A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

Plotke, 405 F.3d at 1102 (alterations and quotation omitted).  Also, if the employer attempts to justify an adverse action against the plaintiff by alleging that the plaintiff engaged in misconduct, the plaintiff can demonstrate that this

-9-

justification is pretextual by establishing that employees who engaged in similar misconduct were treated differently. See Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004). But, regardless of how the plaintiff chooses to rebut the employer's explanation for the challenged decision, it is not enough to show that the facts relied on by the decision-maker were inaccurate or that the decision was otherwise ill-advised; instead, "the plaintiff must call into question the [employer's] honesty or good faith." Exum v. United States Olympic Comm., 389 F.3d 1130, 1137-38 (10th Cir. 2004).

Thierry cannot meet this burden. He contends that Bailey's explanations for declining to promote him are not credible because, before Thierry sought a promotion, Bailey never attempted to address Powers's alleged management deficiencies or Thierry's alleged inappropriate conduct toward his co-worker. In fact, however, Bailey's actions were entirely consistent with his assertions concerning his refusal to promote Thierry.

Well before Thierry applied for a promotion, Bailey learned about strife in Powers's unit during the investigation of Rubye Phillips's harassing conduct. By rejecting severe sanctions against Phillips, who was one of Powers's chief detractors in the office, Bailey effectively took sides against Powers.

Thierry maintains that Bailey's response to the Phillips investigations proves Bailey's bias, because he demanded meticulous fact-finding in that

instance but he was willing to accept rumors and hearsay relating to Thierry's alleged conflict with his co-worker. The apparent gist of this argument is that Bailey must have borne some animus toward Thierry, or else he would have given Thierry the same benefit of the doubt he afforded Phillips during the sexual harassment investigation. This is not necessarily so, as there was a harsh penalty at stake in the Phillips case (termination of employment), while the worst possible outcome for Thierry was continuation of the status quo; accordingly, Bailey could reasonably exercise more care in the former situation than in the latter. Moreover, even if the two situations were comparable, Bailey's different reactions to the allegations against Phillips and Thierry would not necessarily constitute evidence of pretext. On the contrary, his different treatment of these two employees is entirely consistent with his explanation for refusing to promote Thierry. In particular, Bailey's express distrust of Powers could account for his willingness to credit accusations against Powers's favored employees (like Thierry) and his skepticism about accusations against those she disfavored (like Phillips). [1] Although there are other possible explanations for Bailey's disparate

---

[1] We emphasize that we are not deciding whether either Powers or Bailey treated subordinates fairly. Neither is it necessary for us to decide whether Thierry acted inappropriately during his encounter with Jones. The only question we must decide is whether Thierry produced enough evidence to refute Bailey's assertion that he *believed* Powers was a biased administrator and that he *was concerned* about the Thierry-Jones incident. It does not matter whether these

(continued...)

-11-

treatment of Phillips and Thierry, this is the only explanation supported by the evidence; thus, the jury could not embrace any alternative inference–including Thierry's assertion that Bailey treated him differently from Phillips because Thierry participated in protected activity–without engaging in speculation.

We take a similar view of Thierry's observation that Bailey did not convene advisory panels for other hiring decisions. In refusing to promote Thierry, as in refusing to fire Phillips, Bailey chose to reject Powers's preferred course of action. Once again, this is consistent with Bailey's explanation of the challenged decision and would not (in the absence of additional evidence) support a finding of pretext.

Finally, it bears mention that the record contains additional evidence of a strained relationship between Bailey and Powers. Shortly after he made his decision to deny Thierry's applications for promotion, Bailey issued Powers a "Notice of Formal Performance Counseling." R., Tab 38, Ex. 8b. In that document and in a subsequent memorandum addressing related issues, Bailey accused Powers of misconduct and deliberate misrepresentations. These memoranda were drafted before Thierry filed his initial discrimination complaint, which effectively refutes Thierry's suggestion that Bailey invented problems with

---

[1](...continued)
beliefs and concerns were sound; if these were Bailey's true motivations, then the refusal to promote Thierry did not violate Title VII.

Powers as a *post hoc* rationalization for his promotion decision. For these reasons, we reject Thierry's claim that there is a genuine issue of material fact about whether the EEOC's explanations for its actions were pretextual.

### B. *Evidence of Thierry's Superior Qualifications*

Thierry next claims that he had more experience than the applicants selected for the positions he sought and that he scored better on various evaluations. The relevant issue, however, is not Thierry's own assessment of his qualifications, but rather the decision-making officer's assessment. See <u>Exum</u>, 389 F.3d at 1138. Alma Anderson, a member of the advisory panel, stated in her declaration that she considered Habas and Stevens more qualified than Thierry because they had had supervisory experience in the military. Thierry has not offered any evidence suggesting that Anderson's view was not sincerely held.

In any event, the ultimate decision-maker, Bailey, did not defend his choice based on the candidates' qualifications. Instead, he cited other concerns about circumstances in the Oklahoma City office. If these concerns were genuine, then there was no Title VII violation, regardless of the relative qualifications of the applicants.

### C. *Use of Evidence from the Harassment Investigations*

Thierry next asserts that summary judgment was improper because the evidence in the record clearly demonstrated that Bailey relied on information

gathered during the Phillips harassment investigations when he opted not to promote Bailey. It appears that Thierry's factual assertion is correct; Bailey learned of both the strife in the Oklahoma City office and the Thierry-Jones altercation as a result of the harassment investigations. As a legal matter, however, Bailey's reliance on such information does not entitle Thierry to relief.

Bailey's decision was based on the content of the information he was provided, not on the fact that the information was supplied in the course of a protected activity. Moreover, it is significant that this information was not provided by Thierry or anyone close to him; thus, although Thierry cooperated with the investigators, it was not his involvement that produced the information relied on by Bailey. Bailey's reliance on the fruits of another person's protected activity does not give rise to an inference that Bailey intended to punish Thierry for his protected activity.

D. *Errors in the Summary Judgment Process*

At various points in his brief, Thierry contends that the district court mishandled the summary judgment proceedings. First, he asserts that application of the McDonnell Douglas framework was inappropriate in this case because he produced direct evidence of discrimination. However, the only piece of evidence he cites to support this assertion is Bailey's reliance on information acquired

during sexual harassment investigations. As stated above, this reliance was not impermissible, let alone direct proof of a retaliatory motive.

Thierry next contends that the district court erred in relying on Bailey's declaration describing the events leading to the rejection of Thierry's candidacy, because Powers's declaration offered a different rendition of the same events. Thierry also alleges that the court supplied arguments in favor of summary judgment that were not raised by the EEOC. While there appears to be some merit to these contentions, they do not affect our disposition, as we may affirm the entry of summary judgment on any basis supported by the record. See Hayes v. Whitman, 264 F.3d 1017, 1025 (10th Cir. 2001).

Finally, Thierry complains that the court granted summary judgment in favor of the defendants before considering Thierry's own motion for partial summary judgment, which was filed first. In this motion, Thierry contended that he was entitled to partial summary judgment in light of Bailey's admission that he based his promotion decision on information collected during internal sexual harassment investigations. As stated above, this reliance was not improper and does not support Thierry's Title VII claim. Accordingly, even if the district court was obligated to consider Thierry's motion before addressing the EEOC's counter-motion (a matter we do not decide), the failure to follow this sequence did not prejudice Thierry.

IV.

For the foregoing reasons, we affirm the entry of summary judgment in favor of the EEOC.

Entered for the Court


Michael W. McConnell
Circuit Judge